**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresita Kontos, et al., | No. CV-20-00171-PHX-MTL |
| Plaintiffs, | **AMENDED ORDER**[*] |
| v. | |
| Target Stores Incorporated, et al., | |
| Defendants. | |

Plaintiffs Teresita and Pericles Kontos ("Mrs. Kontos" and "Mr. Kontos," respectively) move for sanctions against Defendant Target Stores, Inc. ("Target") for spoliation of evidence. (Doc. 77.) This issue has been fully briefed and oral argument was held on this issue on December 16, 2021. (Docs. 77, 82, 83.) The Court resolves the Motion as follows.

**I.   FACTUAL BACKGROUND**

The following facts are derived from the Plaintiffs' Motion (Doc. 77), Target's Response (Doc. 82), and Plaintiffs' Reply (Doc. 83). On April 26, 2019, Mrs. Kontos tripped and fell at Target in Yuma, Arizona while walking down an aisle in the women's shoe department. (Doc. 77 at 2.) Target employees rushed to help Mrs. Kontos. (Doc. 82 at 2.) Three employees, Brenda Garcia, Jessica Gomez, and Vivyanne Merrick, completed witness statements. (*Id.*) Paramedics were required to lift Mrs. Kontos off the floor and transport her to the hospital where she underwent surgery to repair multiple

---

[*] Amended to denote that this order is a written order ("WO").

fractures in her left arm. (Doc. 77 at 2.) Vivyanne Merrick prepared a witness statement. (*Id.*) In that statement, she noted that a shoe sizer mat (the "subject mat") was on the floor near Mrs. Kontos when she arrived on the scene. (*Id.*) But she did nothing else because Mrs. Kontos never indicated to Target employees that the subject mat was involved in the incident. (Doc. 82 at 2–5.) The next day, another Target employee, Candy Nelson, "walked the shoe department" and failed to determine what caused Mrs. Kontos' fall. (Doc. 77 at 5–6.)

On May 31, 2019, Plaintiffs' counsel sent a "Preservation Letter" in which Target was advised that, as a result of her fall, "[Mrs. Kontos] was seriously injured, including a required surgical repair" and advised Target to preserve "any and all relevant video, audio, notes, report and the subject mat, as evidence." (*Id.* at 8.) In June 2019, that information reached Target's claims handling services which filed a request for the Yuma store employees to remove the subject mat for preservation. (Doc. 82 at 5.) Unfortunately, there was an internal miscommunication. (*See id.*) Between April 2019 and June 2019, the subject mat had been moved to a new location in the store. Instead of removing the subject mat for preservation, Target employees in Yuma accidentally grabbed a different mat in the women's shoe department in June 2019. (*Id.* at 5–7.) On September 19, 2019, Plaintiffs filed their Complaint asserting that Mrs. Kontos tripped over a defective floor mat. (Doc. 77 at 9.) On November 7, 2019, the retained mat was sent to Jones, Skelton & Hochuli (Target's counsel). (Doc. 82 at 7.) That mat was kept in its original packaging in storage until Plaintiffs' expert's inspection on July 24, 2020. (*Id.*) Plaintiffs' accident reconstruction expert, Dan Wall, prepared an initial report on February 16, 2021. (Doc. 77 at 9.) In his report, Wall concluded that the mat Target had retained after the letter and then produced for his inspection was not the subject mat. (*Id.* at 9–10.) This was the first time that Target became aware of the fact that it had preserved the wrong mat. (Doc. 82 at 7.)

The Parties reconvened on March 30, 2021 in an attempt to identify the proper shoe sizing mat. (Doc. 77 at 10.) The Parties' experts could not agree on whether the

1  subject mat could be identified. (*Id.*) Target's expert, Mike Kuzel, was able to determine
2  which mat was the subject mat from Mrs. Kontos' fall, but Wall did not agree with
3  Kuzel's assessment. (Doc. 82 at 7–8.) In fact, Wall believes it is impossible to identify
4  the subject mat now. (Doc. 77 at 13.) Without the subject mat from the day of Mrs.
5  Kontos' accident, Plaintiffs believe they are strongly prejudiced from making a key
6  argument because "in order to definitively determine whether the mat [that caused] [Mrs.
7  Kontos'] trip and fall was a dangerous condition, [Wall] needed to examine the actual
8  mat." (*Id.* at 12; *see generally id.*)

## II.   LEGAL STANDARD

Federal courts "appl[y] federal law when addressing issues of spoliation of evidence." *Aiello v. Kroger Co.*, No. 2:08-cv-01729-HDM-RJJ, 2010 WL 3522259, at *1 (D. Nev. 2010) (citations omitted). "There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337–38 (9th Cir.1985)). Target's conduct was not in violation of a discovery order. And so, if Target spoliated evidence, only through its inherent powers does this "Court [have] discretion to sanction" it. *Veolia Transp. Servs., Inc. v. Evanson*, No. CV 10-01392-PHX-NVW, 2011 WL 5909917, at *2 (D. Ariz. Nov. 28, 2011) (citing *Leon*, 464 F.3d at 958.)

"Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." *United States v. Town of Colorado City, Ariz.*, No. 3:12-CV-8123-HRH, 2014 WL 3724232, at *3 (D. Ariz. July 28, 2014) (quoting *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011)). "'A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied

by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence [.]'" *Surowiec*, 790 F. Supp. 2d at 1005 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509 (D. Md. 2009)).

"Because spoliation is considered an abuse of the judicial process, courts may impose sanctions as part of their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Surowiec*, 790 F.Supp.2d at 1008 (cleaned up). "'Sanctions that a federal court may impose for spoliation include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment.'" *Id.* (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 533 (D. Md. 2010)).

**III.   ANALYSIS**

   **A.   Duty to Preserve**

"It is well established that the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Surowiec*, 790 F.Supp.2d at 1005 (cleaned up). "The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Morford*, 2011 WL 635220, at *3 (D. Nev. Feb. 11, 2011) (citing *In re Napster*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006)). Although this means that determining whether a duty to preserve exists is done on a case-by-case basis, when employees complete an incident report and an injured plaintiff is transported from the accident by medical personnel, a duty to preserve relevant evidence has likely triggered. *See, e.g.*, *Phan v. Costco Wholesale Corp.*, No. 19-CV-05713-YGR, 2020 WL 5074349, at *3 (N.D. Cal. Aug. 24, 2020).

Plaintiffs argue that Target had a duty to preserve the subject mat for potential future litigation after Mrs. Kontos' fall. (*Id.* at 14–15.) Specifically, Plaintiffs assert that notice of litigation is imminent when a customer is removed from a store by ambulance

after a trip and fall. (*Id.*) Additionally, Plaintiffs argue that the fact that after Mrs. Kontos' fall the floor was clean around her except for the subject mat put Target on notice to preserve the subject mat for litigation. (*Id.* at 16.)

Target argues that it did not have a duty to preserve the subject mat until it received the Preservation Letter dated May 31, 2019. (Doc. 82 at 10.) Target supports its position by noting that, at the time she fell, Mrs. Kontos never gave an indication that the subject mat was involved. (*Id.*) Furthermore, Target highlights that pictures of the area taken after "depict the [subject] mat laying on the floor flat . . . without an obvious defect or problem which could have caused Plaintiff's accident." (*Id.*) In fact, Target argues, "the only information that Plaintiff apparently communicated to the Target employees was that she was 'unsure' what caused her to fall and perhaps it was her shoes." (*Id.*) Therefore, Target concludes "there were no facts and circumstances at the time of the investigation at the store that day which gave rise to an obligation on the part of the employees to immediately pull the subject mat from the sales floor and preserve it as evidence in a potentially forthcoming claim." (*Id.*)

Plaintiffs counter that "[Target's] position is untenable" because Mrs. Kontos' injuries were obvious. (Doc. 83 at 5.) Because "(1) [Mrs. Kontos] was taken from the Store by ambulance and (2) [Target's] admission that 3 separate employees and a total of 4 investigation/Incident reports were prepared following the incident," Plaintiffs argue that, "as a matter of clear law, [Target] should have known it had an immediate duty to preserve" the subject mat after Mrs. Kontos' fall. (*Id.*) In support of this argument, Plaintiffs cite *Phan*. (*Id.* at 5–6.)

In *Phan*, plaintiff filed a spoliation motion against defendant Costco Wholesale Corporation for failing to preserve surveillance camera footage. 2020 WL 5074349 at *1. After plaintiff slipped and fell at a Costco Gasoline Station, "defendant's employees took an incident report, several managers were called to the scene, and an ambulance took plaintiff to the emergency room, where he underwent surgery." *Id.* Later, the security footage of plaintiff's fall was lost. *Id.* at *1–2. The *Phan* court determined that "[i]t [was]

reasonable to think that the video would have shed significant light on the cause of the fall." *Id.* at *3. "Further, given that defendant took an incident report and plaintiff was taken away in an ambulance, defendant reasonably should have known the video would be relevant to potential litigation, and thus, had a duty to preserve it." *Id.* And so, the court found that Costco violated its duty to preserve by not saving the video footage.

The Parties do not dispute whether Target had a duty to preserve the subject mat after receiving the Preservation Letter. And so, the Court finds that Target had a duty to preserve the subject mat no later than after receiving the Preservation Letter.

On balance, the Court finds that Target did have a duty to preserve the subject mat after Mrs. Kontos' accident. Although Target's employee records do not indicate that Mrs. Kontos mentioned that she slipped on the subject mat to employees at the store, it is clear that she was in serious pain—so much pain that she was unable to get off the floor without assistance. Like the Costco employees in *Phan*, here, Target employees filed multiple reports and even took pictures of the scene. Furthermore, like the plaintiff in *Phan*, Mrs. Kontos was transported by ambulance to the hospital, further indicating how serious her injuries were. Although the type of spoliated evidence is different here than it was in *Phan*, the facts are sufficiently similar such that, as in *Phan*, the facts of Mrs. Kontos' trip and fall indicate that pending litigation was plausible. Target should have reasonably known that the subject mat would be relevant to future litigation with Mrs. Kontos. Therefore, Target had a duty to preserve the subject mat immediately after Mrs. Kontos' fall and violated that duty.

### B. Culpability

"Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate." *Surowiec*, 790 F. Supp. 2d at 1006 (quoting *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011)). "Nor is there consensus as to how the level of culpability is to be determined, or what prejudice, if any, may be presumed from culpable conduct." *Id.* at 1006–07. What is clear is that "[a]n allegedly spoliating party's

culpability must be determined" on a "case-by-case" basis. *Id.* at 1007.

Plaintiffs argue that Target's behavior was at minimum negligent, but likely rose to the level of bad faith, at two key moments early in this case. (Doc. 83 at 9.) First, Plaintiffs assert that Target's "employees circled the wagon to protect Defendant from liability, as they were trained to do," and intentionally "disregarded Defendant's duty to preserve the evidence" after the accident. (*Id.*) Essentially, they claim that Defendant failed to establish a reasonable evidentiary retention policy which this Court should not reward. (*Id.*) Second, they argue that Target's failure to preserve the subject mat after the Preservation Letter was at least negligent and likely willful or in bad faith. (*See id.*) They also assert that these two instances of Target's "self-serving conduct is the very purpose" for spoliation sanctions. (*Id.*) In sum, Plaintiffs argue the facts point to a "pattern of conduct" by Target which "shows a conscious and bad faith decision to ensure [the subject mat's] evidential value to Plaintiffs was lost." (*Id.* at 10.) Plaintiffs assert that "[m]ore egregious conduct demonstrating entitlement to Plaintiffs' requested spoliation sanction would be hard pressed to exist."

Target counters that Plaintiffs' "outrageous allegation[s]" that Target, and specifically its employee Candy Nelson, intentionally did not preserve evidence after the incident in an attempt to "hoodwink" Plaintiffs are baseless and "not well taken." (Doc. 82 at 10–11.) Target also maintains that the record clearly shows no evidence of "chicanery," willfulness, or bad faith by it or any of its employees. (*Id.*) It asserts that the subject mat was spoliated by mistake. (*Id.*)

The Court agrees with Target. Plaintiffs' allegations that Target "circled the wagon" in a chicanerous attempt to hookwink them is not supported by the record. As noted above, whether a duty to preserve even existed after Mrs. Kontos' fall was a close call. Without any evidence of intent, to say that Target's failure to immediately preserve the subject mat was bad faith or even willful in this situation is dubious at best. But Target was negligent. It had a duty to preserve and failed to uphold that duty because its employees did not think that the subject mat was relevant to Mrs. Kontos' injuries. And

so, the Court finds that Target was negligent in not preserving the subject mat after the accident.

The Court also finds that Target was negligent in failing to preserve the subject mat after the Preservation Letter was sent. Target ineffectively communicated internally after receiving the Preservation Letter. And the record indicates that Target's employees' actions when retrieving the subject mat from the store floor were simple mistakes. But there is no evidence of Target willfully choosing to preserve the wrong mat—let alone any evidence that this was done in bad faith. Mistakes happen. That Target's mistake heavily affects Plaintiffs' case is not evidence of increased culpability.

### C. Relevance

Plaintiffs argue that the subject mat is "the most relevant piece of evidence to support [their] claims." (Doc. 77 at 16.) Target does not dispute this in its response. (*See generally*, Doc. 82.) The Court agrees with Plaintiffs. Their entire claim is posited on the theory that Target had notice that the subject mat was unreasonably dangerous, and that the mat's condition caused Mrs. Kontos to trip, fall, and suffer serious injury. Thus, the mat's condition is critical for determining whether it was unreasonably dangerous and whether Target was, or should have been, on notice of that danger. Target had a duty to preserve the subject mat after Mrs. Kontos' fall, Target was negligent in not preserving the mat, and the mat is the most relevant piece of evidence for Plaintiffs' claims. Therefore, sanctions are appropriate.

### D. Sanctions

Although this Court has discretion to impose sanctions, it "must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Slep-Tone Ent. Corp. v. Granito*, No. CV 12-298 TUC DCB, 2014 WL 65297, at *3 (D. Ariz. Jan. 8, 2014) (quoting *Suroweic*, 790 F.Supp.2d at 1008). Generally, "[s]anctions in the Ninth Circuit are left to the broad discretion of the district courts 'to make discovery and evidentiary rulings conducive to the conduct of a fair and

orderly trial.'" *Walsh v. LG Chem Am.*, No. CV-18-01545-PHX-SPL, 2021 WL 3617675, at *1 (D. Ariz. Aug. 16, 2021) (quoting *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992)).

"The negligent spoliation of evidence may still be sanctionable where it results in prejudice to the opposing party because each party should bear the risk of its own negligence." *Walsh*, 2021 WL 3617675 at *3 (quoting *Net-Com Servs. Inc. v. Eupen Cable USA, Inc.*, No. CV 11-2553 JGB SSX, 2013 WL 4007785, at *3 (C.D. Cal. Aug. 5, 2013)). And "spoliation sanctions should be proportionate to the prejudice" suffered by the other party. *Id.* (citing *Al Otro Lado, Inc. v. Wolf*, No. 3:17-CV-02366-BAS-KSC, 2021 WL 631789, at *7 (S.D. Cal. Feb. 18, 2021)).

Terminating sanctions—"case-dipositive sanctions of dismissal or judgement"— are the harshest sanctions a court can levy and are only appropriate if the right level of culpability is found. *Suroweic*, 790 F.Supp.2d at 1008; *see Leon*, 464 F.3d at 958. Terminating sanctions require "a finding of 'willfulness, fault, or bad faith.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).)

Plaintiffs argue that they "have been materially prejudiced by the absence of the actual shoe sizer floor mat" because, without the mat, they "cannot demonstrate the [subject] mat was in an unreasonably dangerous condition as required by Arizona law" and "[t]hey cannot show the edges were curled, warped, creased, or defective/damaged in any way." (Doc. 77 at 17.) And so, Plaintiffs assert that the Court should enter an evidentiary order finding that Target had notice that the subject mat was an unreasonably dangerous condition and was negligent in ignoring the condition. (*Id.*) Plaintiffs also argue the Court should order "Target to pay Plaintiff's expert fees and costs associated with the inspection of the wrong shoe sizer mat." (*Id.*)

Target argues that Plaintiff is requesting a terminating sanction. (Doc. 82 at 12.) It asserts that terminating sanctions can only be granted by a federal court after it performs the five-part test outlined in *Suroweic*: "(1) the public's interest in expeditious resolution

of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." 790 F.Supp.2d at 1009 (cleaned up); (Doc. 82 at 12.) It then performs the five-part analysis. (Doc. 82 at 12–13.) In this analysis, Target asserts that Plaintiffs' argument ignores the fact that Kuzel was able to identify the subject mat from Mrs. Kontos' accident. (Doc. 82 at 12.) Because Target maintains that the subject mat can be identified, it argues that Plaintiffs suffered less prejudice than they have argued. (*Id.*) Target also highlights that Plaintiffs' prejudice argument ignores the fact that pictures of the subject mat on the day of the accident were taken and are in evidence. (*Id.* at 12–13.) It argues that because the subject mat's condition in these pictures conflicts with Plaintiffs' testimony that the subject mat was curled up after the accident, Plaintiffs are less prejudiced than they claim. (*Id.* at 13.)

Next, Target asserts that Wall—in sharp contrast to Kuzel, who identified the subject mat—did "nothing to ascertain whether the subject mat" was present and identifiable at the March 30, 2021 inspection. (*Id.*) Target argues that "[r]ather than seek additional discovery, or a lesser sanction, Plaintiffs have automatically, and unjustifiably, moved to request the most severe sanction against Target." (*Id.*) And so, Target concludes that, if any sanctions apply, "less extreme options" "including, but not limited to, further inspection of the subject mat as identified by expert Kuzel" should be levied. (*Id.*) Finally, Target argues that Plaintiffs' requested sanctions would erroneously inhibit its comparative negligence defense. (*Id.*)

Plaintiffs counter that Target has misrepresented the sanction they seek. (Doc. 83 at 11.) They argue they are not seeking a terminating sanction because the sanctions they seek are not case dispositive and would leave the issues of causation, damages, and comparative negligence for a jury to decide. (*Id.*) And so, they assert, Target's arguments based on the five factors from *Suroweic* are misguided. (*Id.*)

Target's negligent spoliation of evidence is sanctionable. But any sanctions the Court chooses to levy must be proportionate to the prejudiced suffered by Plaintiffs. The

Court agrees with Plaintiffs' analysis that its requested sanctions are not terminating sanctions because causation, damages, and comparative negligence would remain as issues for trial. But the Court will not levy Plaintiffs' proposed sanctions. The Court finds no reason to implement such a harsh penalty. As Target notes, there exist other pieces of evidence on which a jury may rely in order to determine whether Target is liable for Plaintiffs' injuries. Furthermore, the evidence does not suggest that Target acted willfully or in bad faith. It appears to suggest it acted negligently. The sanctions this Court imposes should reflect its culpability. Accordingly, the Court will read a limiting instruction to the jury regarding the absence of the subject mat on which Mrs. Kontos alleges she tripped and fell. The Court will also award Plaintiffs their expert fees and costs associated with the inspection of the subject mat up to this point in the case.[*]

"[C]ourts have formulated adverse inference instructions that range in their level of severity." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012). "[T]he more egregious the [spoliating party's] conduct, the [harsher] the sanction." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010) (abrogated on other grounds). Because Target was negligent, the Court will instruct the jury that it failed to preserve evidence which has prejudiced Plaintiffs' ability to prosecute their case. The Parties can argue, and the jury can decide, the extent to which the evidence would have been necessary to prove Plaintiffs' claims. The instruction will read:

> Defendant Target Stores, Inc. has failed to preserve evidence for Plaintiffs Teresita Kontos and Pericles Kontos' use in this litigation. This is known as the "spoliation of evidence." I instruct you, as a matter of law, that Defendant failed to preserve this evidence after its duty to preserve arose. The failure to preserve the evidence has prejudiced Teresita Kontos and Pericles Kontos' ability to prosecute their cause

---

[*] Plaintiffs' counsel indicated at oral argument that the Plaintiffs were also seeking attorneys fees as a sanction in this case. But Plaintiffs' Motion (Doc. 77) and Plaintiffs' Reply (Doc. 83) do not request attorneys fees. And so, no attorneys fees shall be awarded in this case.

- 11 -

in this litigation. Whether this finding is important to you in reaching a verdict in this case is for you to decide. You may choose to find it determinative, somewhat determinative, or not at all determinative in reaching your verdict.

IV. **CONCLUSION**

Accordingly,

**IT IS ORDERED granting** Plaintiffs' Motion for Presumption of Negligence Order and Sanctions Against Defendant Target Stores, Inc. Due to Evidence Spoliation (Doc. 77) to the extent stated in this Order. The jury shall be read the limiting instruction contained in this Order before deliberation.

**IT IS FURTHER ORDERED** that Defendant Target Stores, Inc. will pay for Plaintiffs' expert fees and costs associated with the inspection of the subject mat. Plaintiffs shall file an application for expert fees and costs consistent with this Court's rules and procedures by no later than **January 3**, **2022**.

Dated this 4th day of January, 2022.

Michael T. Liburdi
United States District Judge

- 12 -